LUIS A. CARRILLO, Esq. SBN 70398
MICHAEL S. CARRILLO, Esq. SBN 258878
CARRILLO LAW FIRM, LLP
1499 Huntington Drive, Suite 402
South Pasadena, CA 91030
Tel: (626) 799-9375
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA VELEZ, an individual.<br><br>Plaintiff,<br><br>v.<br><br>United States of America; United States Department of Homeland Security; United States Immigration and Customs Enforcement; United States Customs and Border Protection; and DOES 1 through 20, inclusive,<br><br>Defendants. | **Case No.:   2:26-cv-5634**<br><br>**COMPLAINT FOR DAMAGES**<br>1. **False Arrest/ False Imprisonment**<br>2. **Assault and Battery**<br>3. **Violations of the Bane Act (Cal. Civil Code § 52.1)**<br>4. **Intentional Infliction of Emotional Distress of Plaintiff**<br>5. **Violation of Civil Rights**<br>6. **Conspiracy to Commit Civil Rights Violations**<br>7. **Fourth Amendment – Unlawful Detention and Arrest**<br>8. **Fourth Amendment -- Excessive Use of Force**<br>9. **Fifth Amendment – Denial of liberty without due process of law**<br><br>**DEMAND FOR JURY TRIAL** |

1

COMPLAINT FOR DAMAGES

**COME NOW**, Plaintiff **ANDREA VELEZ**, ("Plaintiff"), alleges as follows:

## JURISDICTION AND VENUE

1.      This action arises directly under the United States Constitution.

2.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth Amendment, Fifth Amendment, and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Plaintiff resides in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## INTRODUCTION

4.      This is a civil action for damages brought by the Plaintiff against all of the Defendants for violations of the Plaintiff's constitutional and statutory rights, such as violations of Fourth Amendment, and violations of the Fifth Amendment. Plaintiff also seek redress for false arrest, false imprisonment, assault, battery, personal injury harm, violations of the Bane Act (Cal. Civil Code Section 52.1); and redress for the Intentional Infliction of emotional distress, among other claims, under the Federal Tort Claims Act (FTCA).

5.      This civil rights and state tort action arises out of Plaintiff's unlawful detention, restraint, and mistreatment by federal agents outside her place of employment at 110 E. 9th Street, Los Angeles, California 90015, on June 24, 2025.

6.      Plaintiff alleges that Defendants violated her constitutional rights by detaining and arresting her without reasonable suspicion or probable cause; using excessive force; and depriving her of her liberty without due process of law, despite

COMPLAINT FOR DAMAGES

Plaintiff's full compliance and repeated statements of her United States citizenship.

7.   Plaintiff further alleges that Defendants' conduct included: forcefully pushing Plaintiff to the ground without warning; handcuffing her; physically lifting her off the ground and carrying her away in front of LAPD officers who were present; transporting her to a detention facility; and unlawfully detaining her for over 48 hours; all without lawful justification.

8.   Plaintiff alleges that Defendants' actions were arbitrary, unreasonable, and motivated, by racial profiling and discriminatory intent, including treating Plaintiff differently based on her race, ethnicity, and/or perceived national origin and/or immigration status. Moreover, the Defendants arrested Plaintiff without an arrest warrant signed by a Federal Judge.

9.   The policies, practices, and customs underlying Defendants' conduct, including the conducting of indiscriminate roving patrols targeting individuals based on appearance and ethnicity, the failure to verify citizenship prior to arrest and detention, the use of unnecessary force, and the prolonged detention of individuals without lawful basis, are unconstitutional and have resulted in violations of the civil rights of individuals such as Plaintiff.

10.   Plaintiff asserts claims based on Defendants' violations of her rights under the Fourth and Fifth Amendments to the United States Constitution, as well as related state-law claims, including false arrest/false imprisonment, assault and battery, negligence, violations of the Bane Act, intentional infliction of emotional distress, and conspiracy to commit civil rights violations.

11.   Plaintiff seeks to hold Defendants accountable for their unlawful conduct, to obtain compensation for the injuries she suffered, and to deter similar unconstitutional conduct in the future.

## **PARTIES**

12.   At all times relevant, Plaintiff ANDREA VELEZ (Hereinafter "Plaintiff" or "VELEZ"), a U.S. citizen, was an individual residing in the City of Los Angeles.

13. At all relevant times, Defendant UNITED STATES OF AMERICA was, and is, a sovereign entity and is subject to suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680. The United States is responsible for the acts and omissions of its agencies, including the Department of Homeland Security, Immigration and Customs Enforcement, Customs and Border Protection, and its component agencies, and for the conduct of its employees acting within the course and scope of their employment.

14. At all relevant times, Defendant UNITED STATES DEPARTMENT OF HOMELAND SECURITY ("DHS") was, and is, a department of the Executive Branch of the United States Government and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). DHS is headquartered in Washington, D.C.

15. At all relevant times, Defendant UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT (Hereinafter "ICE") was, and is, a component agency of DHS and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). ICE is headquartered in Washington, D.C. and maintains field offices throughout the United States.

16. At all relevant times, Defendant UNITED STATES CUSTOMS AND BORDER PROTECTION (Hereinafter "CBP") was, and is, a component agency of DHS and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). CBP is headquartered in Washington, D.C. and maintains field offices throughout the United States.

17. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 20, inclusive, are unknown to Plaintiff, who therefore sue said Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believe, and thereon allege, that each of the DOE Defendants was, at all relevant times, an employee, agent, servant, or representative of Defendants DHS, ICE and/or CBP, and was acting within the course and scope of such

COMPLAINT FOR DAMAGES

employment, agency, or representation. Plaintiff further alleges that the acts and omissions of Defendants, were also committed by Federal agents C.G. and Corey Crook, and DOES 1 through 20, and all Defendants were a proximate cause of the injuries and damages sustained by Plaintiff as alleged herein.

18. At all times mentioned herein, each Defendant was responsible in some manner for the acts and occurrences alleged in this Complaint. Plaintiff's damages, as alleged herein, were proximately caused by the acts and omissions of each of the Defendants.

19. Defendants DHS, ICE, CBP and DOES 1 through 20, inclusive, are collectively referred to herein as "Defendants." Defendant DOES 1 through 20 (the "DOE AGENTS") are federal agents.

20. At all relevant times, each Defendant was the agent, servant, employee, joint venturer, and/or co-conspirator of each other and every other Defendants, and in doing the acts alleged herein, was acting within the course and scope of such relationship and under color of law. In doing the things herein alleged, Defendants were acting under the color of law and within the course and scope of their duties of said alternative personality, capacity, identity, agency, representation and/or employment and were within the scope of their authority, whether actual or apparent.

## FACTUAL ALLEGATIONS

21. Plaintiff re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein against all Defendants.

22. Plaintiff ANDREA VELEZ is a United States Citizen of Latina descent, living in the City of Los Angeles in California. VELEZ was born in the City of Los Angeles.

23. On or about On June 24, 2025, at approximately 9:00 a.m., VELEZ was being dropped off near her workplace by her mother and her 17-year-old sister, at or near the intersection of 9th Street and Main Street in Los Angeles, California.

24. Upon arrival, VELEZ observed a chaotic scene on the street.

COMPLAINT FOR DAMAGES

Approximately eight unmarked police vehicles were present, and agents wearing plain clothes, masks, and sunglasses, without identifying themselves, were chasing and detaining street vendors in the area. VELEZ was unsure what was occurring in the midst of the chaos as she was proceeding toward her job site.

25.     Without any warning, without identifying herself, and without probable cause, ICE agent C.G. ran toward VELEZ and forcibly pushed VELEZ and then C.G. slammed her to the ground. VELEZ had committed no crime and had no interaction with any of the agents prior to being pushed to the ground. VELEZ is only 4 feet 11 inches tall and weighs 125 pounds. ICE agent C.G. was over 6 feet tall. ICE agent C.G. did not have a warrant signed by a Federal Judge to arrest VELEZ.

26.     VELEZ's mother and 17-year-old sister, from inside their car, witnessed the attack on VELEZ and, believing she was being kidnapped by masked, unidentified men, called 911 of the Los Angeles Police Department ("LAPD").

27.     LAPD officers arrived at the scene in response to the 911 calls. VELEZ, fearing for her life, rushed to the LAPD officers and pleaded for help. VELEZ said to one LAPD officer: "I don't know who these people are, they are trying to kidnap me." Rather than assisting VELEZ or investigating her report of an apparent kidnapping, the LAPD officers did not intervene and told VELEZ to "stand there." The LAPD officers permitted ICE agents C.G. and Corey Crook to take VELEZ away.

28.     While VELEZ was speaking with LAPD officers, ICE agent Corey Crook, a large agent, walked up from behind, bear-hugged VELEZ, and lifted her off the ground. VELEZ's legs were flailing as she was lifted. VELEZ did not resist or assault any of the agents. Defendants handcuffed VELEZ and ICE agent Corey Crook physically carried VELEZ away from the location where the LAPD officers were standing. This sequence was recorded on video by witnesses present at the scene.

29.     VELEZ was transported to an unidentified vehicle driven by ICE agent Corey Crook. Throughout the encounter and during her transport, VELEZ repeatedly informed ICE agents C.G. and Corey Crook that she was a United States Citizen.

COMPLAINT FOR DAMAGES

Despite her statements, the ICE agents continued to address her in Spanish. VELEZ was subsequently Mirandized but declined to speak without a lawyer.

30. VELEZ was taken to a detention facility where she was changed into a white jumpsuit, given a tuberculosis shot, and held in a room with three other detainees. ICE agents continued to speak to VELEZ in Spanish while she was in the holding cell, even after she informed them multiple times that she spoke English and was a United States citizen.

31. Neither VELEZ's family nor her attorney were able to locate her for at least 24 hours following her arrest. VELEZ was unlawfully detained for over 48 hours. On June 26, 2025, a federal judge ordered VELEZ's release upon payment of a bond.

32. On July 10, 2025, the Court ordered the criminal complaint against VELEZ to be dismissed without prejudice pursuant to Federal Rule of Criminal Procedure 48(a). ICE agents C.G. and Corey Crook lacked reasonable suspicion or probable cause to prove that VELEZ had violated any law at any time.

33. As a direct and proximate result of Defendants' conduct, VELEZ sustained multiple bruises and soreness throughout her body from being pushed to the ground and physically carried by agents. VELEZ suffered physical injury, severe emotional distress, humiliation, and fear.

34. VELEZ's silver/white iPhone 16 Pro Max was taken by agents when she was detained. Upon her release, agents returned only her iPhone case but not her phone, claiming it would be mailed to her. To date, VELEZ has not received her iPhone 16 Pro Max, resulting in property damage of at least $1,199.00.

35. As a result of her arrest and detention, VELEZ lost at least four days of work, resulting in economic losses of approximately $4,320.00.

36. To date, VELEZ has been fearful to return to her workplace at 110 E. 9th Street, Los Angeles, California. She has not returned to work in person since her release and has been working remotely. VELEZ fears that she will again be unlawfully targeted and detained by ICE agents without probable cause.

COMPLAINT FOR DAMAGES

37.     Multiple eyewitnesses, all of whom were observing the incident from the eighth floor of a building directly above the intersection of 9th Street and Main Street, confirmed that: (a) VELEZ did not resist or assault any agent; (b) no agent chased VELEZ prior to the encounter; (c) VELEZ was carried away from LAPD officers without a struggle; and (d) VELEZ was targeted because of her appearance and ethnicity, while other hostile and unruly bystanders, who were throwing objects at agent vehicles, were not arrested

38.     Upon information and belief, the conduct described herein was the result of inadequate training, supervision, and oversight by supervisory and policymaking officials; and because Defendants tolerate and approve of racial profiling.

**A. DHS Adopted Policies to Further the Administration's Directive to Increase Immigration Enforcement**

39.     DHS adopted the three challenged policies as part of a broader directive from the White House and Border Czar Homan to increase immigration arrests and removals by raiding workplaces based on which industries tend to employ undocumented workers rather than a prior investigation to identify whether there's any reason to suspect that employees on a particular worksite are undocumented.

40.     These directives are aimed at increasing the number of undocumented people arrested and removed from several hundred a day to at least 3,000 per day.

41.     The administration's stated goal is to deport one million people per year, which requires 2,739 arrests per day, not counting the citizens and other lawful residents who are mistakenly arrested.[1]

42.     The 3,000-arrests-per-day quota is the "minimum" goal.[2]

---

[1] Brittany Gibson & Stef W. Kight, *Scoop: Stephen Miller, Noem tell ICE to supercharge immigration raids* (May 28, 2025), https://www.axios.com/2025/05/28/immigration-ice-deportations-stephen-miller.

[2] *Id.*

COMPLAINT FOR DAMAGES

43.     "Arresting, you know, several hundred a day isn't enough. So yeah, we gotta vastly increase that," confirmed Border Czar Homan.[3]

44.     The Defendant's directive to Secretary Noem and ICE's leadership was clear: "do what you need to do" to increase deportation numbers. The administration encouraged immigration officers to "push the envelope" and turn the "creativity knob up to 11"; "[i]f it involves handcuffs on wrists, it's probably worth pursuing."[4]

45.     To meet the 3,000-daily-arrest quota, the Defendants has taken several steps that form the policies challenged here, including: (1) increasing the number of immigration officers, in part by deputizing law-enforcement officers from other agencies; (2) increasing workplace enforcement; (3) targeting people who work in certain industries and fit a generalized demographic profile rather than conducting targeted investigations to find people who might be violating immigration laws and; by permitting racial profiling and permitting Defendants to arrest people without a warrant signed by a Federal Judge.

**1. Turning Federal Law Enforcement Into Immigration Enforcement**

46.     On inauguration day, President Trump signed Executive Order 14159 ("Protecting the American People Against Invasion"), which instructs the Attorney General, DHS, ICE, CBP, U.S. Citizenship and Immigration Services (CIS), and HSI to prioritize immigration arrests and deportations and for the Attorney General and Secretary of Homeland Security to jointly establish Homeland Security Task Forces nationwide and; by permitting racial profiling and by permitting Defendants to arrest

---

[3] Cam Smith, *Vt. Officials respond to Trump administration's 'sanctuary city' threats*, WCAX3 (May 30, 2025), https://www.wcax.com/2025/05/30/vt-officials-respond-trump-administrations-sanctuary-city-threats/; Transcript of interview with White House Border Czar Tom Homan, *State of the Union*, CNN (aired July 13, 2025), https://transcripts.cnn.com/show/sotu/date/2025-07-13/segment/01.

[4] Elizabeth Findell, *et al.*, *The White House Marching Orders That Sparked the L.A. Migrant Crackdown*, Wall St. J. (June 9, 2025), https://www.wsj.com/us-news/protests-los-angeles-immigrants-trump-f5089877.

COMPLAINT FOR DAMAGES

people without a warrant signed by a Federal Judge.

47.    Executive Order 14159 also instructs the Secretary of Homeland Security to (1) make HSI's "primary mission" enforcement and removal and (2) take all appropriate action to enable the Director of ICE, the Commissioner of CBP, and the Director of CIS to set priorities that ensure enforcement and removal.

48.    The Secretary of Homeland Security has statutory authority to "confer or impose" on any federal employee the power to investigate and arrest illegal immigrants. See 8 U.S.C. § 1103(a).

49.    On January 23, 2025, the Acting Secretary exercised that power to authorize DOJ law-enforcement officers working for USMS, DEA, ATF, and the Bureau of Prisons to serve as immigration officers.[5]

50.    Weeks later, Secretary Noem began deputizing law-enforcement officers from other federal agencies to serve as immigration officers.[6]

51.    By August 2025, over 14,500 federal law-enforcement officers, another 1,400 non-law-enforcement federal officers, and about 10,000 state and local law-enforcement officers are now deputized to serve as immigration officers.[7]

**2. Prioritizing Random Arrests Over Targeted Enforcement**

---

[5] Press Release, *Statement from a DHS Spokesperson on Directive Expanding Immigration Law Enforcement to Some Department of Justice Officials*, Dep't of Homeland Sec. (Jan. 23, 2025), https://www.dhs.gov/news/2025/01/23/statement-dhs-spokesperson-directive-expanding-immigration-law-enforcement.

[6] Press Release, *ICYMI: Secretary Noem Deputized State Department Officials as Immigration Officers*, Dep't of Homeland Sec. (Feb. 20, 2025), https://www.dhs.gov/news/2025/02/20/secretary-noem-deputized-state-department-officials-immigration-officers; Vittoria Elliot, *State Department Agents Are Now Working With ICE on Immigration*, WIRED (Sept. 4, 2025), https://www.wired.com/story/state-department-dss-agents-ice-immigration/

[7] David J. Bier, *ICE Has Diverted Over 25,000 Officers from Their Jobs*, Cato Inst. (Sept. 3, 2025), https://www.cato.org/blog/ice-has-diverted-over-25000-officers-their-jobs.

52.    Until this year, immigration officers planning to search for and seize undocumented immigrants have had to submit a form to a supervisor identifying their target's name, appearance, known addresses, employment, immigration history, and criminal history.

53.    But this year, DHS eliminated the policy that required immigration officers to identify their targets in advance.

54.    The policy became useless, according to former immigration officials, because DHS no longer requires officers to know their targets before they go out to make arrests.[8]

55.    Rather than relying on targeted investigations, Border Czar Homan and Secretary Noem have directed immigration officers to go on patrols to search for people who work in certain industries and fit a generalized demographic profile of an undocumented worker in that industry.

56.    DHS has developed a general demographic profile of what undocumented people tend to look like in an industry or location.

57.    A top CBP official, for instance, explained that officers are detaining people based on their "location" and "how they look."[9]

### B. Operation "Return to Sender"

58.    Upon information and belief, a lawsuit filed in the Fresno Division of the Eastern District of California arose out of an enforcement operation referred to as "Operation Return to Sender," which was conducted in Kern County and surrounding

---

[8] Julia Ainsley et al., *Under Trump administration, ICE scraps paperwork officers once had to do before immigration arrests*, NBC News (Sept. 9, 2025), https://www.nbcnews.com/politics/national-security/trump-administration-ice-scraps-paperwork-officers-immigration-arrests-rcna229407.

[9] Chip Mitchell, *Feds march into Chicago; top border agent says people are arrested based on 'how they look,'* Chicago Sun Times (Sept. 28, 2025), https://chicago.suntimes.com/immigration/2025/09/28/ice-agents-spotted-downtown-on-michigan-avenue-along-chicago-river.

COMPLAINT FOR DAMAGES

areas and involved the deployment of approximately sixty federal agents from the El Centro Sector under the direction of Gregory Bovino.[10]

59. The operation involved stops, detentions, and arrests of individuals in predominantly Latino communities, including farmworkers and day laborers, many of whom were not suspected of criminal activity.[11]

60. The allegations in that action included that individuals were detained without individualized suspicion and that enforcement actions were carried out in a manner that disproportionately targeted persons based on race, ethnicity, and/or perceived immigration status; and encouraged "racial profiling."

61. Upon information and belief, the conduct at issue in that action reflects a pattern, practice, or custom of unlawful detention practices and inadequate safeguards to prevent the detention of United States citizens and other individuals without lawful basis; and permitted arrests without an order signed by a Federal Judge.

62. Defendants, were on notice of such conduct and the risk of constitutional violations arising from similar enforcement practices, yet failed to take reasonable steps to prevent such violations, including the conduct alleged in this case.

63. VELEZ timely submitted a claim for damages to the United States Department of Homeland Security, U.S. Customs and Border Protection, U.S. Immigration and Customs Enforcement, and other appropriate federal agencies. Although the claim was not expressly rejected, it is deemed denied by operation of law because Defendants failed to make a final disposition of the claim within six (6) months after it was filed. 28 U.S.C. § 2675(a).

## FIRST CLAIM FOR RELIEF

### False Arrest/False Imprisonment

(By Plaintiff against all Defendants)

---

[10] *United Farm Workers v. Kristi Noem*, Case No. 1:25-cv-00246-JLT-CDB.

[11] *Id.*

COMPLAINT FOR DAMAGES

64. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

65. Defendants, including agents of the UNITED STATES, DHS, ICE, CPB, and DOES 1 through 20, while acting within the course and scope of their employment, intentionally deprived Plaintiff of her freedom of movement by use of force, threats of force, and unreasonable duress. Defendants detained Plaintiff without a reasonable suspicion, without probable cause, on June 24, 2025, outside her place of employment at 110 E. 9th Street, Los Angeles, California.

66. Plaintiff did not knowingly or voluntarily consent to the detention or restraint.

67. Defendants detained Plaintiff for an unreasonable and unlawful period of time, over 48 hours, despite Plaintiff's repeated statements that she was a United States Citizen, her evident compliance, and the absence of any lawful basis to arrest or hold her. Plaintiff was ultimately released only upon the order of a federal judge on June 26, 2025, and the criminal complaint against her was dismissed on July 10, 2025.

68. During this detention, Defendants bear-hugged Plaintiff and physically lifted her off the ground, handcuffed her, carried her away from LAPD officers, transported her in an unmarked vehicle, held her in a detention facility, changed her into a white jumpsuit, administered a tuberculosis shot, and confined her with other detainees, all without lawful justification.

69. Defendants' conduct in detaining and restraining Plaintiff was undertaken without any lawful justification.

70. The conduct of Defendants was a substantial factor in causing harm to Plaintiff.

71. As a direct and proximate result of Defendant's conduct, Plaintiff suffered loss of liberty, physical pain, emotional distress, humiliation, and other damages.

72. The conduct of Defendants was willful, wanton, malicious, and carried out with a conscious disregard for Plaintiff's rights, entitling Plaintiff to an award of

COMPLAINT FOR DAMAGES

exemplary and punitive damages.

73. Defendants are liable for Plaintiff's injuries because they were integral participants in the wrongful detention and/or failed to intervene to prevent these violations.

74. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper. Plaintiff further seeks punitive damages against the individual DOE Defendants, including Federal agents C.G. and Corey Crook.

## SECOND CLAIM FOR RELIEF

### Assault and Battery

(By Plaintiff against all Defendants)

75. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

76. Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, while acting within the course and scope of their employment, intentionally and unlawfully used force against Plaintiff.

77. Defendants, among other things, detained Plaintiff without lawful justification; ICE agent C.G. pushed Plaintiff to the ground without warning; ICE agent Corey Crook bear-hugged Plaintiff and lifted her off the ground; Defendants handcuffed Plaintiff; and Defendants physically carried Plaintiff away from the location where LAPD officers were present.

78. The force used by Defendants was harmful and offensive, and was carried out without Plaintiff's consent and without any legal justification or privilege.

79. The excessive force, including being pushed to the ground and lifted off her feet, caused Plaintiff multiple bruises and soreness throughout her body, as well as severe emotional distress.

80. Defendants had no lawful basis to use force against Plaintiff, and the force used was unreasonable and excessive under the circumstances.

81. Defendants, and each of them, either directly participated in the unlawful

use of force, were integral participants, and/or failed to intervene to prevent the unlawful conduct despite having a realistic opportunity to do so.

82. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical injury, pain, and Defendants inflicted an intentional infliction of emotional distress upon Plaintiff; humiliation, and other damages.

83. The conduct of Defendants was willful, wanton, malicious, and carried out with a conscious disregard for Plaintiff's rights, entitling Plaintiff to an award of exemplary and punitive damages against the individual Defendants.

84. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

85. Plaintiff further seeks punitive damages against the individual DOE Defendants.

### THIRD CLAIM FOR RELIEF

### Violations of Bane Act (Cal. Civil Code § 52.1)

(By Plaintiff against all Defendants)

86. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

87. California Civil Code section 52.1 (the "Bane Act") prohibits any person from interfering, or attempting to interfere, by threats, intimidation, or coercion, with the exercise or enjoyment of rights secured by the Constitution or laws of the United States or the State of California.

88. Defendants UNITED STATES, DHS, ICE, CBP, C.G., Corey Crook, and DOES 1 through 20, inclusive, while acting within the course and scope of their employment, intentionally interfered with Plaintiff's constitutional rights by means of threats, intimidation, and coercion.

89. Defendants' acts included, but were not limited to: running toward Plaintiff and pushing and slamming Plaintiff to the ground without warning; bear-hugging Plaintiff and lifting her off the ground; handcuffing Plaintiff; physically

COMPLAINT FOR DAMAGES

carrying Plaintiff away from LAPD officers; transporting Plaintiff to a detention facility; confining Plaintiff for over 48 hours without lawful basis; and otherwise restricting Plaintiff's freedom of movement without lawful justification.

90. The conduct of Defendants constituted threats, intimidation, or coercion separate from, and in addition to, the underlying unlawful detention, including the use of physical force and prolonged confinement to compel Plaintiff's compliance and submission.

91. Through the above-described conduct, Defendants interfered with Plaintiff's rights, including but not limited to the right to be free from unreasonable searches and seizures, the right to liberty, and the right to due process of law.

92. Defendants acted intentionally, knowingly, and with reckless disregard for Plaintiff's rights, and their conduct was malicious, oppressive, and in conscious disregard of those rights.

93. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical pain, emotional distress, humiliation, and other damages.

94. The conduct of Defendants was a substantial factor in causing Plaintiff's harm.

95. Defendants are liable for Plaintiff's injuries because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations.

96. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

97. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## FOURTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

(By Plaintiff against all Defendant)

98. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

COMPLAINT FOR DAMAGES

99. Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, engaged in extreme and outrageous conduct toward Plaintiff.

100. Defendants' conduct included, but was not limited to: pushing Plaintiff to the ground without warning or probable cause; bear-hugging Plaintiff and lifting her off the ground in front of LAPD officers she had sought for help; handcuffing Plaintiff; physically carrying Plaintiff away; transporting Plaintiff to a detention facility; holding her incommunicado for over 24 hours such that neither her family nor her attorney could locate her; detaining Plaintiff for over 48 hours despite her repeated assertions of United States citizenship; continuing to address Plaintiff in Spanish after she repeatedly stated she spoke English; and subjecting Plaintiff, a 4'11", 125-pound U.S. citizen, to arrest and prosecution for allegedly assaulting a federal officer, charges that were subsequently dismissed.

101. Defendants knew, or should have known, that their conduct would cause Plaintiff severe emotional distress, particularly given that Plaintiff repeatedly informed them of her citizenship and fully complied with all instructions.

102. Defendants' conduct was intentional, reckless, and carried out with a conscious disregard for Plaintiff's rights and well-being.

103. As a direct and proximate result of Defendants' conduct, Plaintiff suffered severe emotional distress, including humiliation, anxiety, fear, trauma, and mental anguish. To date, Plaintiff has been unable to return to her workplace in person and continues to fear she will be unlawfully targeted again by federal agents.

104. Plaintiff also suffered physical manifestations of emotional distress, including pain and discomfort resulting from the excessively tight handcuffing and prolonged restraint.

105. The conduct of Defendants was willful, wanton, malicious, and oppressive, entitling Plaintiff to an award of exemplary and punitive damages against the individual Defendants.

106. Defendants are liable for Plaintiff's injuries because they directly

COMPLAINT FOR DAMAGES

participated in the conduct, were integral participants, and/or failed to intervene to prevent the wrongful acts.

107.   Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

108.   Plaintiff further seeks punitive damages against the individual DOE Defendants, including C.G. and Corey Crook.

## FIFTH CLAIM FOR RELIEF

### Violation of Civil Rights

(By Plaintiff against all Defendants)

109.   Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

110.   This cause of action is brought pursuant to the U.S. Constitution for violation of Plaintiff's Civil rights under the Fourth and Fifth Amendments to the United States Constitution, including the right to be free from unreasonable seizures and the right to liberty without due process of law.

111.   Upon information and belief, Defendants, acting under color of federal authority, intentionally, recklessly, and/or with deliberate indifference to Plaintiff's clearly established constitutional and civil rights, engaged in unlawful acts and omissions, including but not limited to:

    a.   unlawfully detaining Plaintiff without reasonable suspicion or probable cause;

    b.   pushing and slamming Plaintiff to the ground without warning or legal justification;

    c.   bear-hugging Plaintiff and lifting her off the ground;

    d.   physically carrying Plaintiff away from LAPD officers she had sought for assistance;

    e.   handcuffing Plaintiff;

    f.   transporting Plaintiff in an unmarked vehicle to a detention facility

and holding her for over 48 hours;

g. continuing to detain Plaintiff despite her repeated assertions of United States citizenship;

h. targeting Plaintiff based on her appearance, race, and/or perceived ethnicity rather than any individualized suspicion of wrongdoing;

i. failing to use reasonable alternatives to detention and force;

j. failing to properly train and supervise agents regarding lawful detention, reasonable suspicion, and use of force; and

k. failing to promptly release Plaintiff upon confirmation that she is a United States citizen.

112. The foregoing conduct deprived Plaintiff of rights secured by the Constitution and laws of the United States, including but not limited to the right to be free from unreasonable seizures, excessive force, unlawful detention, and deprivation of liberty without due process of law under the Fourth and Fifth Amendments.

113. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered physical pain, bodily injury, emotional distress, humiliation, embarrassment, anxiety, and other damages according to proof.

114. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

115. Plaintiff seeks compensatory damages, attorneys' fees, costs, and such other relief as the Court deems just and proper.

**SIXTH CLAIM FOR RELIEF**

**Conspiracy to Commit Civil Rights Violations**

(By Plaintiff against all Defendants)

116. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

117. This cause of action is brought pursuant to the U.S. Constitution for conspiracy to violate Plaintiff's rights under the Fourth and Fifth Amendments to the United States Constitution, including the right to be free from unreasonable seizures

COMPLAINT FOR DAMAGES

and the right to liberty without due process of law. A conspiracy claim under Bivens is actionable where there is an express or implied agreement among defendants to deprive a person of constitutional rights, and an actual deprivation resulting from that agreement.

118. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, including C.G. and Corey Crook and DOES 1 through 20, inclusive, reached an express and/or implied agreement among themselves to detain, restrain, and subject Plaintiff to unlawful treatment without reasonable suspicion or probable cause.

119. In furtherance of this agreement, Defendants acted in concert to target Plaintiff outside her place of employment; push her to the ground without warning; lift her off the ground and carry her away from LAPD officers she had sought for help; handcuff her; transport her to a detention facility; and hold her for over 48 hours without lawful justification.

120. Defendants knew or reasonably should have known that Plaintiff was a United States citizen who had committed no crime and posed no threat, yet nonetheless agreed to continue Plaintiff's detention and restraint without lawful justification.

121. Upon information and belief, Defendants' actions were motivated by Plaintiff's race, ethnicity, and/or perceived national origin and immigration status, and not by any lawful or objective criteria. Multiple independent eyewitnesses observed that Plaintiff was not hostile or aggressive, and that other hostile and disruptive bystanders present at the scene, including individuals who threw objects at agent vehicles, were not arrested. This disparate treatment demonstrates that Plaintiff was singled out based on her appearance and ethnicity.

122. Defendants' conduct constituted impermissible racial profiling and selective enforcement in violation of the equal protection component of the Fifth Amendment, as Defendants targeted Plaintiff based on her appearance and/or perceived immigration status rather than any individualized suspicion of wrongdoing.

123. The decision to continue Plaintiff's detention despite clear evidence of her

COMPLAINT FOR DAMAGES

identity and citizenship, including a valid United States passport, further demonstrates that Defendant's actions were not based on legitimate law enforcement objectives, but were instead driven by discriminatory intent.

124. The coordinated actions of Defendants were not the result of independent decision-making, but rather were undertaken pursuant to a shared understanding and agreement to deprive Plaintiff of her constitutional rights.

125. As a direct and proximate result of this agreement and the acts taken in furtherance thereof, Plaintiff was subjected to an unlawful seizure, excessive force, and deprivation of liberty and equal protection without due process of law.

126. The conduct of each individual Defendants was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages.

127. Defendants are liable for the constitutional violations alleged herein because they were integral participants in the conspiracy and resulting unlawful conduct and/or failed to intervene to prevent the violations despite having a realistic opportunity to do so.

128. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

129. Plaintiff further seeks punitive damages against the individual DOE Defendants including C.G. and Corey Crook.

## SEVENTH CLAIM FOR RELIEF

### Fourth Amendment—Detention and Arrest

(By Plaintiff against all Defendants)

130. Plaintiff re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein.

131. The Fourth Amendment protects individuals against unreasonable searches and seizures, including detention without reasonable suspicion and arrest without probable cause, as well as the use of excessive force during a seizure.

COMPLAINT FOR DAMAGES

132.   Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, detained, restrained, and seized Plaintiff without reasonable suspicion or probable cause, thereby subjecting Plaintiff to an unlawful detention and arrest in violation of the Fourth Amendment.

133.   At all relevant times, Defendants lacked reasonable suspicion or probable cause to detain or arrest Plaintiff. Plaintiff had committed no crime, was not suspected of any criminal activity, and was simply arriving at her place of employment when she was targeted.

134.   Despite Plaintiff's repeated statements confirming her United States citizenship, and the absence of any lawful basis to continue her confinement, Defendants unlawfully prolonged Plaintiff's detention for over 48 hours. Plaintiff was released only upon order of a federal judge, and the criminal complaint against her was subsequently dismissed.

135.   Each Defendant is liable for these violations because they directly participated in the unlawful conduct, were integral participants, and/or failed to intervene to prevent the violations despite having a realistic opportunity to do so.

136.   Upon information and belief, Defendants DOES 1-20 implemented, maintained, and/or permitted policies, practices, or customs that directly resulted in the unlawful seizure and prolonged detention of Plaintiff in violation of the Fourth Amendment, including: (a) targeting individuals for detention based on appearance, race, and/or perceived ethnicity rather than individualized suspicion; (b) failing to implement adequate procedures to verify United States citizenship prior to arrest and during detention; and (c) permitting the use of unnecessary and excessive force absent any legitimate law enforcement justification.

137.   Defendants DOES 1-20 knew or reasonably should have known that such policies, practices, and failures would lead to violations of the Fourth Amendment, including unlawful seizures and excessive force, yet failed to take reasonable steps to

COMPLAINT FOR DAMAGES

prevent such violations.

138. As a direct and proximate result of Defendants' actions, Plaintiff suffered physical injury, pain, emotional distress, humiliation, and other damages.

139. Defendants' conduct was willful, wanton, reckless, and in conscious disregard of Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages against the individual Defendants.

140. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

141. Plaintiff further seeks punitive damages against the individual DOE Defendants.

### EIGHTH CLAIM FOR RELIEF

**Fourth Amendment—Excessive Force**

(By Plaintiff against all Defendants)

142. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

143. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, used force against Plaintiff during her seizure and detention outside her workplace on June 24, 2025.

144. The force used by Defendants was objectively unreasonable under the circumstances. Plaintiff was compliant at all times, posed no threat to the safety of any officer or others, was not attempting to flee, and had not committed any crime. Multiple independent eyewitnesses confirmed that Plaintiff did not resist or assault any of the agents.

145. Notwithstanding the absence of any legitimate law enforcement need, ICE agent C.G. pushed and slammed Plaintiff to the ground without a warning. ICE agent Corey Crook then bear-hugged Plaintiff and physically lifted her off the ground in front of LAPD officers. Defendants handcuffed Plaintiff and carried her away from the scene. This sequence was captured on video.

COMPLAINT FOR DAMAGES

146.    The force used caused Plaintiff to suffer multiple bruises and soreness throughout her body. The physical act of being pushed to the ground and lifted off her feet without warning constituted unreasonable, excessive force under any standard.

147.    Defendants' use of force was unnecessary, disproportionate, and not justified by any legitimate governmental interest.

148.    The force used against Plaintiff was part of, and exacerbated by, an unlawful detention, further rendering the use of force unreasonable under the Fourth Amendment.

149.    Each individual Defendant is liable for the use of excessive force because they directly participated in the conduct, and/or failed to intervene to prevent the unlawful use of force despite having a realistic opportunity to do so.

150.    As a direct and proximate result of Defendant's actions, Plaintiff suffered physical injury, pain, emotional distress, humiliation, and other damages.

151.    The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff constitutional rights, entitling Plaintiff to an award of punitive damages.

152.    Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

153.    Plaintiff further seeks punitive damages against the individual DOE Defendants.

### NINTH CLAIM FOR RELIEF

**Fifth Amendment - Denial of liberty without due process of law**

(By Plaintiff against all Defendants)

154.    Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

155.    The Due Process Clause of the Fifth Amendment provides that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend.

COMPLAINT FOR DAMAGES

156. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, deprived Plaintiff of protected liberty and property interests without due process of law.

157. Defendants deprived Plaintiff of her liberty by arresting and detaining her outside her workplace at 110 E. 9th Street, Los Angeles, California on June 24, 2025, and by continuing to hold her in a detention facility for over 48 hours, without probable cause, reasonable suspicion, or any lawful basis.

158. During her detention, Defendants restricted Plaintiff's freedom of movement entirely; held her incommunicado such that neither her family nor her attorney could locate her for over 24 hours; confined her with other detainees; and subjected her to a tuberculosis shot. Plaintiff was prevented from leaving despite being a United States citizen who had committed no crime.

159. Defendants deprived Plaintiff of property by seizing and failing to return her iPhone 16 Pro Max during the detention, without lawful justification.

160. Defendants arbitrarily prolonged Plaintiff's detention despite her repeated assertions of United States citizenship and the lack of any evidence that she had committed any crime. Defendants knew or reasonably should have known that Plaintiff's continued detention was baseless, yet failed to release her.

161. Upon information and belief, Defendants lacked adequate procedures, training, or safeguards to ensure that individuals are promptly released once it becomes apparent that there is no lawful basis for detention.

162. Defendant's conduct was arbitrary, conscience-shocking, and undertaken without any legitimate governmental interest.

163. Defendants acted with deliberate indifference to Plaintiff's rights by continuing to detain her despite clear evidence of her identity and citizenship.

164. Upon information and belief, Defendant's actions were motivated, in whole or in part, by Plaintiff's race, ethnicity, and/or perceived national origin, further rendering the deprivation of Plaintiff's liberty and property unlawful.

COMPLAINT FOR DAMAGES

165. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of liberty, emotional distress, humiliation, and other damages.

166. The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages.

167. Defendants are liable for the violations of Plaintiff's Fifth Amendment rights because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations.

168. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

169. Plaintiff further seeks punitive damages against the individual DOE Defendants.

**PRAYER FOR RELIEF**

170. WHEREFORE, Plaintiff respectfully requests entry of judgment in her favor and against Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, as follows:

      a. For compensatory damages, including damages under federal law, in an amount to be proven at trial;

      b. For punitive damages against the individual DEFENDANTS, including DOES 1 through 20;

      c. For a declaration that Defendants' acts, omissions, policies, practices, and conduct described herein violated Plaintiff's rights under the Fourth and Fifth Amendments to the United States Constitution;

      d. For a declaration that Defendants' detention, restraint, use of force, and continued seizure of Plaintiff without lawful basis were unconstitutional and unlawful;

      e. For reasonable attorneys' fees pursuant to applicable law;

COMPLAINT FOR DAMAGES

f. For costs of suit incurred herein;

g. For pre-judgment and post-judgment interest as allowed by law; and

h. For such other and further relief as the Court may deem just, proper, and appropriate.

DATED: May 26, 2026                                 CARRILLO LAW FIRM, LLP

By: _____
Luis A. Carrillo, Esq.,
Attorney for Plaintiff

COMPLAINT FOR DAMAGES

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demand a trial by jury.


DATED: May 26, 2026                CARRILLO LAW FIRM, LLP


By: _____
Luis A. Carrillo, Esq.,
Attorney for Plaintiff

COMPLAINT FOR DAMAGES